Thank you and good morning, Your Honors. I am James Nielsen, Counsel for the Appellant, Penn-Star Insurance Company, and I would like to reserve about five minutes for rebuttal, if I may. In the very few minutes that we have here, I'd like to address the simplest, most convenient way to offer the court a route to reverse the District Court's judgment against my client, Penn-Star, and in favor of Zenith. And that is the simple first prong of the auto-exclusion that we address here, which is the portion that applies to any sort of injury arising out of the ownership, maintenance, or use by any person or entrustment to others of any aircraft, auto, etc. And I'm going to apply that to the Camry. Is there a way to adjust the microphone a little bit so that I don't, I'm losing some words? Or maybe just keep your voice up. Okay. I'll just speak a little louder, Your Honor. There you go. It's a very big room. Yes. We seem so close, but it's a bit of a cavern here. So, Your Honor, I'm speaking in terms of the Toyota Camry involved in the accident first, and I'll obviously answer questions. Are there any limits to this? I mean, your position, obviously, is that there was an auto involved. It wasn't the auto owned by an insured, but it was somebody's auto, and that's it. Is it your position that basically any time we have any auto, the exclusion kicks in? Exactly, Your Honor. It's a categorical exclusion. That was one of the errors that... Let me ask about that. Let's say you were, let's say I'm driving my auto down the road, minding my own business. I'm driving beside a farm, and they have a general liability policy, and they have a boiler, and the boiler explodes, right? And it just happens to be that I happen to be in a car at the time. The boiler explodes and takes me out, right? And so I'm... Now, normally, that boiler explosion would be covered under the general liability policy, but it has an auto exclusion, like the same, worded the same way. Would I not be covered? The person driving my car down the road. Was your injury caused by the auto? That would be the question I'd ask the court. Yeah, I think that's actually... So I think you hit the nail on the head. So it has to do with the... So I didn't see much briefing from either of the parties on the arising out of language, right? That seems to me... Your argument, your focus is that it evolves to any use by any person of any auto. But the key is whether it arose out of the use of... Was it caused by the Camry? And I don't see anything in this record that tells us that it was caused by the Camry, right? I know your insurance companies paid millions of dollars of liability because presumably there was... But where's the evidence that it arose out of the use of the Camry? Well, Your Honor suggested that there was no briefing on the issue of arising out of. We did. We spent a few paragraphs on that point in our opening brief. The phrase arising out of is one that this circuit actually took the lead on and California courts have followed back in a decision called Continental Casualty versus the City of Richmond. And we briefed that case in our opening brief and followed it up with, I believe it was Century Surety versus somebody. Does it matter if the auto is at fault though? It doesn't matter. It doesn't matter. That's the whole point of the arising out of language. And that's an important point Your Honor raises. If I could just expand on that because this is really important. It's litigated a lot in California. The law is beefy on it. Those are very strong cases and there are in fact dozens of cases. In fact, I thought of dropping a footnote with about 30 cases following this court's decision in City of Richmond from back in the 1980s in which the courts emphasized that when the policy uses in the context of an exclusion, the phrase arising out of from the excluded risk, all it requires is an incidental relationship. Any mere connection flowing from it's not proximate causation. It has nothing to do with liability. But who was at fault? Do we know who was at fault in the accident? Because what, a car hit a tractor or vice versa? Do we know? I know. I'm not sure it's in the record clearly. Does the record show that or it doesn't? The court can infer something from the record. This is a case in which I think a couple of people were killed and a couple more injured when a car speeding along at night, late at night on a country road ran into or clipped the disc array behind a tractor. It was the occupants of that car that sued the folks responsible for the tractor. And they settled the case for $2 million. Well, the reason they settled is they were drunk and speeding at 90 miles an hour and it probably wasn't the tractor's fault. So if we're actually talking about who's liable, who's responsible for the accident, I think the court could infer from the fact that with all those injuries, it was a $2 million settlement. But your position is it doesn't matter? But it doesn't matter. The court's interested in that. People are always interested in that. But this is a categorical limitation. Let me ask you about, so you say it doesn't matter. And you cited a couple, it sounds like you've cited our cases. But ultimately, you agree it would be California law that would govern. Yeah, and California cases follow it routinely. Are you familiar with the Partridge case? I'm familiar with the Partridge case, certainly. The Partridge case involved somebody who was driving in a vehicle. They were hunting rabbits with a modified firearm, driving in a vehicle. And the argument had a very similar type exclusion, just like this. It said that they weren't covered by accidents arising out of the vehicle. And the California Supreme Court, back in 1973, said that it had to be that – and this is sort of the main case, as best I can tell, from California – says that this arising out of language does actually require something like causation because the fact that the car didn't have any involvement but this gun goes off in the car and injures somebody, that that would be – that the exclusion would not apply in that circumstance to the – this was their separate insurance than the car insurance. And that makes sense to me. It makes sense because the whole purpose of these kind of provisions is because you expect people will have automobile insurance. That's why you're excluding, because you don't want to have double coverage for automobile insurance. So that's why you have these kind of exclusions. And so – but in instances where the automobile is not at fault, then it normally wouldn't cover. So why would you have an exclusion? You're right. Your Honor, it normally does not. Let's back up here and look at what is normally done. The basic policy language for an auto exclusion would extend coverage to the farmer in the fact setting that Your Honor described initially. That's the standard exclusion. This is an expansion of the exclusion to make it categorical. So the question is not whether you normally would want that. Normally people do want that. And in many settings, for example, contractors would – Counsel, counsel, you say it's an expansion of exclusion. And the expansion is that it uses the word any person, any vehicle. So it expands it from just being your own vehicles as the farmer to anybody. Correct. And that makes sense to me because I want to make sure that if there's a salesman who doesn't work for me that's driving on my farm and hits somebody, that it's that salesman's insurance, that salesman's auto insurance, that will cover. So that actually makes sense to me. But what doesn't change in the expansion is the arising out of it. It still has to arise out of the use of a car. And so what I'm curious about is what does the language arising out of mean? And when I read these California cases, there is – contrary to what I think you just told us, there is ample California law that says that these cases, that the arising out of language has to be like something like causation. In fact, it has to be something more than proximate causation in order for something to arise out of the use of a car. That's what I meant. I didn't see that brief by you. I didn't see that brief by you. And it seems like that's the key issue in this case. Perhaps that should be briefed, Your Honor, because let me just emphasize here, Your Honor, if the court looks at the Partridge case, and I did not look at it for purposes of this briefing because nobody has raised it and we have arguably the finest appellate lawyers for Zenith and State here who did not raise it, and for good reason. I would suggest that the court ask for additional briefing if that is a concern because the Partridge case has rarely been applied with the sort of breadth the court is describing. It's a very limited case, and I think it talks about cause and fact if recollection – Well, there's the Kramer case from the Intermediate Court of Appeals that talks about the vehicle merrily serving as a side for the activity is not enough to kick in an exclusion when you have this kind of language. In other words, the fact that – So my hypothetical that I gave you, I think your answer was actually right on when you said, well, did you cause the accident? But if I'm just driving by and the boiler explodes and takes me out and you have a rising out of use of a car type exclusion like this, California law seems very clear to me, not just the Partridge case but the Kramer case, many other cases I've got here in front of me that I had to get from my clerks, not from you all. Saying that that would not be covered. Your Honor, I would propose to brief those cases because I believe we can – I haven't read them recently, but I have read them a lot and in many contexts, and I've briefed them before. And my recollection is there are causation limitations and there are cases that harmonize the City of Richmond case, the Century Surety case, and all the line of cases that treat a rising out of as a minimal causation test, a but-for causation test, and not approximate legal liability. I have language right here that literally says it's not a but-for. This is part of the Intermediate Court of Appeals. Well, Your Honor, all I can do is say that I don't have those cases in front of me. I didn't review them for this particular appeal because no one ever raised them. I think there were good reasons that no one ever raised them. I think it's important when a court raises a different line of authority than the parties are relying on to give the parties an opportunity to brief it. I would assume that your position is that it's pretty clear that this arises out of, as opposed to being a case where the instrumentality of the injury is something other than the auto. So I would think that that would be your position, that this is not one of those other cases, but a clear arising out of case. Absolutely. All right. Just wanted to make sure what your position was. When I asked Judge Van Dyke about who caused it, I was thinking of all lines of cases, for example, when there were cases involving things like sexual assault in which cars are used to restrict the victim. Or boats. There were boats. You have the boat case, Your Honor. If you look down there, you'll find I have one of my cases there. The Prince case is a Cadillac case with children that overheated in a car. And the courts draw a distinction between whether the car is merely the situs of the injury, or was involved in the causal chain. This is important because that's the problem. On this record, we don't know anything other than that possibly the car may have been the situs. I don't know how we would reverse the district court based on my reading of these cases. It certainly may be true that the car was involved, but that's something we just don't have in front of us. That's not true, Your Honor. We know from all the allegations that the plaintiffs were driving on the road and collided with a tractor. I have a whole bunch of cases here that talk about how vehicles that were driving on the road were involved in an injury, and the mere presence of an automobile at the time of the accident does not establish the required causal connection between the car and the incident. That's a quote from the Aetna insurance case out of the Second Circuit Court of Appeal. I have like five or six of these cases. That's the problem. If we literally don't know anything about what the car's role in causing this accident, I don't think we can infer and reverse the district court based on an inference that somehow the car must have been involved, especially when all we know is that $2 million was paid from the tractor's role in the incident. I don't know what to do with that. I suppose there's a waiver. There could be a waiver issue here because the other side didn't argue it. May I follow up with another question? If the tractor is not an auto, does that make a difference to your arising out of argument? If the tractor was not an auto? If the tractor is not an auto. It doesn't as to the Camry. There's two distinct features to this. One turns on the status of one vehicle, the Camry, as an undisputed auto. The exclusion would also apply if the tractor was an auto. For example, even if the points that Judge Van Dyke were raising here held the day and there was a finding that the exclusion wouldn't apply if the accident was caused by the Camry, the court would still need to address whether the tractor was an auto within the exclusion and then all the other issues that we address in the briefing. I think I was thinking you were going to say that if the tractor is not an auto and the only auto we're concerned about is the Camry and the accident would still arise out of the use of the Camry as an auto because it either got hit or was hit. That's correct, Your Honor. I was assuming that we had lost that point and we had to move on. But no, the whole point is even if the auto driven by the plaintiffs in the underlying case was not at all in fault, if it was all Mr. Kolodil's fault for misdriving the tractor on the public road, it would still be a categorical exclusion of that type of risk. That's the whole point of the exclusion. That's the whole point of broadening it. Because otherwise it would be the same. There wouldn't change what was already in the original exclusion, which would extend to a situation like this. If that's your position, then I think you, isn't your answer to my earlier hypo that I'm driving along and the boiler explodes and I happen to be in a car? Wouldn't that just as much apply in that circumstance? The boiler explodes, but I'm in a car. I'm using a car. I wouldn't be in that precise location at that time if I wasn't using a car. And so I think you'd have to say that the car would be excluded under that circumstance. Do you want to change your answer to the hypo? Well, I mean, depending on the details of the accident, I can imagine facts that would render the car a mere incidental, a mere situs of an injury and not in the causal chain. I guess I'm having trouble understanding your distinction between something being the mere situs, but then you also seem to be taking the position that the car didn't have to be involved as a causal part. It seems to me like you have two... That's all the car is if it's not involved as a mere causal part. It is just the mere situs. That's what these cases say. They use that language. Some of them say the vehicle's use must be a, quote, contributing cause. Others say that it can't just be the situs. They're saying the same thing. Well, I'd like a chance to look at those cases, Your Honor. Well, Mr. Nielsen, we've taken you over your time. We're going to give you two minutes for rebuttal when you come back up here, but we'll let you take a break and we'll hear from your opposing counsel. I appreciate that. Thank you, sir. And, Your Honor, I will be standing and not sitting. If you'll please. Understood. Thank you. Good morning. Good morning. Thank you, Your Honor. May it please the Court, Petter Batalden appearing on behalf of Zenith. I'd like to start, Judge Bress, with your initial question about if there's any limit on PennStar's position. And I think what you've heard from PennStar is that they are taking a categorical approach. There is no limit. If an auto is touched in any way, shape, or form by an occurrence... Well, I don't think they're saying that. I mean, I think there's been some interesting hypotheticals here, but we know this was an auto crashing into a tractor. How does it not arise out of...? I thought none of this has been briefed, and I don't think it was even the subject below. I understood your argument to be that this exclusion is ambiguous as to whether it covers an auto that's not owned by the insured because the Camry was somebody else. Your Honor, our position is not based on ambiguity. This is not a case about ambiguity, and I think the California Supreme Court in Haines has made that very clear. This is a case about the separate California law requirement that limitations on coverage must be conspicuous, plain, and clear. That's different. How is it not conspicuous, plain, and clear here? It says... It doesn't say that it's limited to the insured's auto. The district court seems to have implied that into this, but it's hard to see where that comes from. So as to the Camry, Your Honor, and the farm tractor analysis is different. Yeah, let's put the tractor to the side. Let's talk about the Camry. As to the Camry, the Court of Appeals decision in Essex is your guide. Essex says that to satisfy the conspicuous, plain, and clear requirement, you cannot defeat the reasonable expectations of the average policyholder. And Essex explains why, in a situation like ours, those reasonable expectations would be defeated if you applied an any-auto exclusion with the kind of breadth that PennStar is. And there's two, I would say, sort of structural reasons why Essex makes sense, aside from the fact that it's binding on all of us because it's the only published... It's a different clause, right? I'm sorry, Your Honor? Was it a different clause in Essex? Or is it the exact same clause? The Essex policy, like the PennStar policy, says use dot, dot, dot of any auto. So the language is the same. Did it say to any person? It did not. But I don't think that to any person adds anything because there's always going to be a person. A car will be driven. An auto will be driven by a person. So the breadth any auto embraces to any person, I don't think that actually adds any meaning. But aside from the fact that Essex is binding, there are two good reasons, structurally speaking, why it makes sense. The first is, as I think Judge Van Dyke alluded to in the earlier argument, when you purchase a liability policy with an auto exclusion, the idea of the auto exclusion is that the policyholder has to go out and buy separate auto insurance coverage. Those risks are different, et cetera. But here, the Camry could never have been insured. You couldn't buy an auto policy... What kind of policy could the Camry have bought? It could have... I don't want to take too much of your time. The only kind of policy it could have bought was a policy where the accident arose out of the activities of the Camry. It would be like liability insurance. That's why you could buy insurance, and presumably the Camry had insurance, but that insurance would only cover if the Camry was somehow at fault, to use layman's terms. So what I'm trying to figure out... Your whole argument devolves to... I agree with you about your reasonable expectations argument that you're making, but I don't agree with the way you've made it. As I was sitting there trying to figure this case out, it occurred to me that a person's reasonable expectations would be the way you're saying is because of the arising out of language. Because we don't think... We think a car should only be excluded where it sort of arises out of, like, the activity. Because for that, cars can, in fact, do, by California law, have to buy insurance. So given that, if that's what the way the car... If that's what our reasonable expectations would be, what I'm trying to figure out is, what do I do since I've arrived at that position? And then I went and had my clerk look, because you didn't do it in your briefs, and I found that there's lots of case law in California interpreting arising out of precisely the way that I thought that it might be, right? And so what do I do with that now? Because do I find that you've waived the argument because you didn't cite any of these cases? You didn't make any... many arguments based on the arising out of? I'm trying to figure out what... That's my quandary here. I think I have two main answers to that, Your Honor. The first is, we didn't waive... We certainly didn't waive anything. Waiver's an intentional relinquishment, and we didn't retreat from that position. And we're the appellee. You can affirm on any ground. So appellees don't waive issues in the way that appellants waive issues. But more fundamentally, I think what your point gets to is the second teaching of Essex, which is the problem with Penstar's position. There's a mismatch between the insuring clause and the exclusion. What a reasonable insured expects is that the insuring clause, which says, you know, we cover you for bodily injury and property damage, that giveth, and then the exclusion taketh away. There has to be congruence between the scope of the two. That's what's missing here. Would it be different if the policy instead of saying arising out of the bodily injury, arising out of the use of a car by any person, if it said bodily injury involving in any way whatsoever a car? Would that change your argument? Your Honor, I don't think that would impact the Essex analysis, which is, again, what's binding all of us here, because it would still defeat the reasonable expectations of the average policyholder. What if it was, like, really bold, like the first page of the policy, and it said, you know, read this, because if there's a car within 20 feet, you're not going to have coverage? Yeah, if it's in the insuring clause or the title of the policy, I think maybe we could find a scenario in which, you know, Penstar might be able to rewrite this policy. Which means to me that the arising out of language is what's doing all the work for you. And so if that issue had been raised, Your Honor, by the other side, we could have responded to it in our brief. But as the appellee, we're free to rest... Give me the impression they knew about these cases, and they didn't raise them because you didn't raise them. Why would they raise your best argument for you? Well, Your Honor, we're happy for you to affirm on the basis that they haven't shown that their exclusion applies. This is an exclusion, after all. They're the ones who bear the ultimate burden of showing that their exclusionary language limits coverage. It's all attributable to them. And if they haven't carried that burden either in the district court or this court, they lose. But to come back to Essex, because I think this does speak to your point, their position is that because the auto-exclusion takes the Camry out of play, that there's no coverage. But the insuring clause of their policy never insured the Camry. There's a mismatch, if you will, between what the exclusion covers and what the insuring clause covers. That doesn't make any sense under California law. The scope of each has to be congruent. The exclusion takes away something that the insuring clause otherwise gives. They don't have that. Nobody insured the Camry here. Camry was a stranger. The drivers and the passengers were unknown to the occupants of the Camry. That's why the analysis of the Camry fails under their position. First of all, what is your answer to whether or not the Camry was at fault here? But secondly, assuming, as I think we don't know on this record, whether the Camry is at fault, what if the Camry was at fault? What if it was entirely the Camry's fault? Let's start there. What if it was entirely the Camry's fault? Do you think it would exclude it then? To answer your first question, I don't think the record before the Court in this appeal answers that question of who's at fault. But to get to your second question, I don't know, given the way PennStar has framed their position, I don't know that it matters if the Camry was at fault or was not at fault. The mere involvement of the Camry, in their view, brings into play the language any ought. I know that's their position. What I'm saying is, from your position, how do you want us to read that exclusion? I mean, I assume exclusion does something, excludes something. Well, it certainly excludes the acts of the insured, the insured's drivers, the employees of the insured. That's the camp, the farm operation, collateral, the driver, or gold and labor. Their interests as the insured, their autos, their drivers, that's what the auto exclusion applies to, not strangers. That's what Essex tells us. Essex says if there's a stranger... No, that can't be right, because we have this that it changed, and initially they were only excluding autos that were covered by camp or golden, and then they broadened it to include anybody. And that makes total sense to me, because like I said, if the third-party salesman comes driving on your farm to sell you something for your farm and runs over somebody, you want to make sure that it's their insurance that covers over the running over, right? And so I don't think that reading is correct. If I don't think that, what do you think it excludes? So you're positing a difference between the original exclusion in the policy and the endorsement in the policy, which expands the scope of the any-auto exclusion, if I understand your question. Why does it not... It seems to me the best reading of it, is it excludes when the other automobile, driven by anybody, that's why they broadened it, when it's driven by anybody, when the other automobile is somehow at fault. When the other automobile is at fault, so it's in fault, then you're excluding coverage. That seems to me... That's not your position? If that's what the exclusion means, that it had to be, they had to show that the Camry was at fault to trigger that. They haven't shown that. There's no evidence in the record of that, and on that basis you have to... But what is your reading? I'm asking you, what's your reading? Our reading is, following Essex, you cannot enforce this exclusion in this circumstance, because it defeats the reasonable expectations of the insured. That's what Essex tells us. So is your position, and just make sure I understand, your position is, they were trying to exclude if you're within 20 feet of an automobile at all, an automobile is just like a coverage-free zone around an automobile. Not 20 feet, but touching distance. Alright. And your position is, that's what they were trying to do, and it's kind of a matter of public policy. They just can't do that under California law. I take Mr. Nielsen at his word. It's a categorical exclusion. Well, he hasn't said that, really. I don't know exactly where he thinks the line is, but he hasn't said it's a categorical exclusion. Well, if any... Mercedes, he says, is covered. Okay, we haven't seen that in the brief, but he says any auto means any auto, and here the Camry is any auto. So his position is that the exclusion comes into place, simply because the Camry is an auto. But again, the problem with that is Essex says that would defy the reasonable expectations of a policyholder. And that's our position. We're all bound by Essex, because there's no indication in any other California appellate decision... Essex is the Fright Night case? Yes. Yeah, okay, and it's the cars that are the cause of the situation created by Fright Night. Nobody from the insured is driving a car, etc., etc. Totally two separate people. Exactly right, Your Honor, and so the cars are strangers to the insured in Essex, every bit as much... And I just don't quite get your argument as to why the any person addition doesn't make a difference when looking at Essex. Do you want to explain to me again why you think the any person doesn't make a difference between Essex and this case? Sure, Your Honor. Any auto would, on PennStar's reading, include the Camry. Any person adds nothing to that. It's the fact that it's an auto that brings the exclusion into play from PennStar's perspective. It's like a tough argument, though, right? I mean, your whole argument was it's not clear and conspicuous that it covers autos being used by a non-insured, but this says any person. And, Your Honor, if we were here making an ambiguity argument, a plain meaning argument, I agree that would be problematic, but we're not. We're here on the separate California document. Clear and conspicuous sounds like just the flip side of ambiguity. That's why I'm struggling with your argument that, you know, your response to Judge Brass that like, well, we're not talking about ambiguity. We're just saying it's not clear and conspicuous. I don't... Those are the same thing. And, Your Honor, reasonable people can debate the wisdom of the California Supreme Court's chosen approach to this, but what clear... what conspicuous, plain, and clear refers to is the positioning, the organization, the way that the terms are conveyed, the way that the message is conveyed to the policyholder, and whether the policyholder can grasp it. Even if we get past this, we still have another issue to deal with about your excess clause because your friend on the other side says that that clause is too broad and therefore unenforceable. What's your response to that? Your Honor, the two policies can be harmonized. The district court did that here, and PennStar has not contested the harmonization in this court. They've said this clause is just unenforceable because it's overbroad, and there are California cases that have taken issue with some of these excess clauses that are sort of all-encompassing in a way that this one might be. I think that's fair, Your Honor, and the cases that have done that have done it in situations where there's a conflict, where an insured would be left without coverage. There'd be a gap because both insurers would be pointing the finger at the other and saying, well, we're excess, and the other says, well, no, we're excess. We don't have that situation here because the district court was able to harmonize the policies. Do we not have the situation because it's a clash between two insurers, or do we not have the... You agree that in a two-insurer situation, you might still have an excess clause that's too close in theory one could imagine that, but we don't have that problem here because as long as you can give meaning, as long as you can honor both insurance policies, as the district court said you could, there's no reason to resort to considerations of equity, tiebreaker rules, default rules, that kind of thing. The law supplies an answer if you can harmonize the policies, so we don't get to these equitable default rules and the sort of escape clause concerns that PennStar has raised. And again, the harmonization of the two policies is what deals with that issue. Unless there are further questions, I'll... You say harmonization, referring to that, are you saying because they wouldn't be left without coverage because the insurer would not be left without coverage, or you mean something else by that? That's what I mean, Your Honor. But we have California cases, the cases that say if somebody would be left without coverage, the fact that somebody won't be left without coverage isn't necessarily dispositive. So what do you do with that? I think that's one aspect of it, and then the other aspect of it is can the court give meaning to both policies without having... That's law without having to get to equity, which is default rules. And that's not really how I read the California courts on this. I mean, it seems to me the courts are making an equitable decision that they don't want a situation where you're dumping all the coverage, under certain circumstances. I don't know if it applies here, but where you're dumping all of the coverage on somebody else, even if you won't be left with an uninsured insurer. It's a sort of policy decision by California. May I answer your question? But Your Honor, you're not dumping any coverage on an insurer whose policy expressly provides that it will be primary in that situation. So in other words, if you can harmonize the two policies, you're not doing violence to Penn Star's settled expectations or to Zenith's. But in certain underwriters, the Lloyds, which is, you know, they were both primary. Right. In other words, there was a conflict. You couldn't reconcile the policies. I mean, your policy was primary in some way. You said you wanted to be excess, but your policy, you're not arguing that your policy was only an excess policy. No. It was, in this particular context, it was excess because of the other insurance clause. If Penn Star and Zenith had identical other insurance clauses that each made their policies excess and pointed the finger at each other, leaving the insurers with no coverage, then you'd have a problem. Then you'd have the situation that the California cases say requires the application of these rules. We don't have that because you can reconcile the policies, just as the district court did. So we ask this court to affirm. Thank you very much, sir. And let's hear a rebuttal from Mr. Nielsen. Okay. Two minutes. The elevator talk. Let me just say a kind word about Judge Justice Hill in Fresno who decided the Essex v. City of Bakersfield case for two reasons. One, he confronted language that was weird. Most people, and I say weird because I've read it to a lot of people, and their face usually scrunches up when they hear it. They go, what does that mean? So just be clear what we're talking about. The case that district court and Zenith relied upon, Essex, addressed an exclusion that applied to injury arising out of the ownership, maintenance, use... Pardon me. I'm reading the wrong one. Injury arising out of, caused by, or contributed to by the ownership, non-ownership, maintenance, use, or entrustment to others of any auto. Everybody, I read that too, and I just kind of pull out of my office or in my own household what goes, what the heck is non-ownership? And it just kind of, it's a thunk. It stops the reading, and it makes it hard to read the whole thing. I think Justice Hill correctly said this is an odd language, and it's hard to read. And then a whole series of things flowed from that initial reaction. One of them was the reliance on the reasonable expectations doctrine, which for over a century both California courts and this circuit applying California law have consistently applied the objective theory of contracts under which the reasonable expectations of the insured are judged by the language of the policy. And post facto declarations like Mr. Court relied would normally be either excluded or simply disregarded in the interpretive process. Justice Hill never had a chance to do that because nobody ever objected or raised the issue of the inapplicability of the declaration by the county employee who bought the insurance submitted in that case. Wasn't raised in trial court, no objection, nothing in the briefs, nothing in the opinion addressing the distinction between the objective theory of contracts and the subjective theory of contracts, which would not apply under scores of cases, both from this circuit and from California. Can I ask one question? I haven't really asked you about waiver. I think you heard your friend on the other side say that you never raised the interpretation of arising under, so they didn't ever raise it. If I was to conclude that arising under sort of decides this case, have they waived that argument? I didn't see it in the briefs. I didn't see... I'd say it's forfeit. As we did raise the issue of arising out of, spent better part of a page pointing out how broad it is, how California courts and this circuit have consistently found it to be broad. It would create a significant disruption in California law if that law was not applied. That point was never challenged in the appellee's brief. It was a point raised on that exact issue that was never challenged, and there is Ninth Circuit law that we cited in our reply brief. What about his point, and I apologize, but what about his point that, yeah, but since it's a exclusion, you bear the burden of proof on it, so I guess if he didn't raise it, I guess he's saying he didn't waive it or something. This is not an evidentiary issue. We know what the language says, and the question is what legal grounds do we have to use to make an argument in the opening brief that was essentially conceded in the appellee's brief, and under the cases we cited, the court is free to treat that as a point that's been conceded. Okay, I think we have your argument. I want to thank you for your argument this morning, both counsel. Spirited argument here on a Friday morning. This matter is submitted.
judges: BRESS, VANDYKE, Restani